In the Matter of the Claim of JEAN B. POST, Respondent, *v.* TENNESSEE PRODUCTS & CHEMICAL CORP. et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, November 26, 1963.

*F. Walter Bliss* for appellants.

*William J. Fischer, Jr.,* for claimant-respondent.

*Louis J. Lefkowitz, Attorney-General (Julius Fell* and *Daniel Polansky* of counsel), for Workmen's Compensation Board, respondent.

REYNOLDS, J.   Decedent, a 37-year-old outside salesman covering New England and half of New York State for a manufacturer of chemicals and associated products, was killed in an automobile accident on the Merritt Parkway near Greenwich, Connecticut, at approximately 9:00 P.M., on August 1, 1957.   On the day of his death decedent proceeded from his home in Norwalk, Connecticut, from which he conducted his operation on his employer's behalf, to the offices of the Society of Plastic Engineers, Inc., in Greenwich.   Business discussion was conducted through lunch with one Mr. Bernhard, an officer of the society.   On leaving the restaurant at which they had lunch decedent and Bernhard met a Mr. Cowilich, an official of Cleworth Publishing Company, which organization publishes a trade magazine in the plastics field and was desirous of regaining lost advertising from decedent's employer.   At Cowilich's suggestion all proceeded to his office where, despite the fact that during part of the time the group watched a ball game on television, discussions of a business nature were carried on till approximately 8:30 P.M., when Mr. Cleworth, president of the publishing company, invited the group to dinner.   The accident in question occurred on the way to the establishment at which they were to have dinner.

Appellants first claim that decedent at the time of his demise was engaged in activities which were outside the scope of his employment and seek to invoke the rule in *Matter of Pasquel v. Coverly* (4 N Y 2d 28).   They assert that decedent's duties in sales did not include the field of advertising and therefore his association with the Cleworth enterprise was nonbusiness.   The record, however, indicates that decedent had a wide latitude in carrying out his duties.   His immediate supervisor testified that decedent was authorized to seek out anyone who could have value in selling and that the Cleworth Publishing Company was a valuable contact.   Additionally this witness testified that if decedent had submitted a voucher for the dinner at the Cleworth meeting he probably would have honored it.   On this state of the record we cannot say there is not substantial evidence on which the board could find decedent was in the course of his employment.   Appellants also urge that even if afternoon's activities were business-related, no business was conducted at

dinner and therefore decedent was not in the course of employment while proceeding to dinner. It is sufficient in answer to this argument to point out that decedent never arrived at dinner. The board, considering the nature of claimant's employment and the day's earlier activities, could reasonably find that business would have been conducted at dinner had the decedent arrived.

Appellants also argue that death was due solely to intoxication. The presumption afforded by subdivision 4 of section 21 of the Workmen's Compensation Law against intoxication being the sole cause of an accident is, however, a heavy burden for appellants to overcome (*Matter of Shannon* v. *American Can Co.*, 278 App. Div. 546, mot. for lv. to app. den. 303 N. Y. 1016). It is only where all the evidence and reasonable inferences therefrom allow no other reasonable conclusion than that intoxication is the sole cause that we may interfere with the board's determination (cf., e.g., *Matter of McCall* v. *Wayne Liq. Corp.*, 19 A D 2d 758; *Matter of Segnini* v. *Roxbury Ski Center*, 14 A D 2d 449; *Matter of Cliff* v. *Dover Motors*, 11 A D 2d 883, affd. 9 N Y 2d 891; *Matter of Scott* v. *Schaefer & Sons*, 3 A D 2d 775). Here the record indicates that decedent drank cocktails prior to and after lunch, that drinks were available on a help yourself basis during the afternoon session at the Cleworth offices and that decedent's blood contained 0.29% alcohol by weight, an amount which the medical testimony indicated impaired driving ability. Further there is testimony by Bernhard that he did not consider decedent in fit condition to drive and, therefore, refused to ride with him. Additionally the accident occurred as decedent proceeded westerly, the wrong way, down the passing lane of the easterly two lanes of the Merritt Parkway. How he actually came to be there can never be determined with certainty since decedent and his passenger were both killed as a result of the accident. Appellants contend that since he lived in the area and was familiar with the parkway, intoxication is the only answer. It is apparent, however, that the parkway entrances were so constructed that a driver at night could become confused as to which lanes he was entering. There is no evidence that other than being in the wrong lane decedent was improperly operating his vehicle. It is conceivable that decedent did not realize he was on a single direction highway but believed himself on a road in which cars were proceeding in both directions. Thus whether decedent's entry into and traveling along the wrong lane were a result solely of his intoxicated condition or also resulted in part at least from other factors present in the record was a question within the fact-finding

power of the board and its determination must, therefore, be sustained.

The decision and award should be affirmed.

HERLIHY, J. (dissenting). This claim presents, in my opinion, an opportunity to re-examine that part of section 21 of the Workmen's Compensation Law where it shall be presumed in absence of substantial testimony "4. That the injury did not result solely from the intoxication of the injured employee while on duty".

In view of the present judicial decisions, the Workmen's Compensation Board has no alternative but to affirm automobile, accident cases where an employee is involved as the driver and where alcohol is a factor. There is, in my opinion, a valid distinction between the present claim and our prior decisions. We have heretofore determined that where there was a possibility of some defect in the automobile or the possibility of some physical intervention, aside from alcohol, which might have caused the accident, then intoxication is not the *sole* cause thereof. These possibilities are not here present factually or inferentially and if we are to be realistic, the claim must be dismissed. The testimony by the claimant and the employer's witnesses would convince a reasonable person that the only fair inference to be deduced from the evidence was that this employee was intoxicated and that the automobile accident resulted solely from this condition and thus there is substantial evidence to overcome the presumption (*Matter of Shearer* v. *Niagara Falls Power Co.,* 242 N. Y. 70).

The cases cited by the majority are not precedents.

*Matter of Segnini* v. *Roxbury Ski Center* (14 A D 2d 449). Here the decedent had a high blood count but we found from the facts that there existed an inference that the collision occurred as the result of the attempt by the decedent to pass a lumber truck, part of which protruded beyond the wheels at the point of impact. There was also testimony that shortly before the accident the decedent had been observed to be acting in a normal manner.

*Matter of Cliff* v. *Dover Motors* (11 A D 2d 883). Here again there was a high blood count but this was an *unwitnessed* accident and again there was testimony that a short time prior to the accident the decedent had a conversation with a fellow employee.

*Matter of Scott* v. *Schaefer & Sons* (3 A D 2d 775). This was an *unwitnessed* accident where the decedent's automobile collided with the rear end of a tractor trailer standing on the highway.

After a review of these cases and the recognition that the Workmen's Compensation Law is to be given a broad and liberal interpretation, we examine the present factual situation.

The decedent, an outside salesman, visited a business prospect and thereafter they had lunch at a restaurant where both men had a number of cocktails. When they were about to leave, the decedent met an acquaintance (afterwards killed in decedent's automobile) and after some discussion they adjourned to his acquaintance's office where again there was talk about business and at the same time the group watched a baseball game on television and drinks were available from a bar in the office. About 8:30 in the evening it was decided to have dinner and the group was to meet at a designated restaurant. There ensued some discussion about the ability of the decedent to drive his automobile, one of the witnesses testifying that he did not feel that the decedent was fit to drive and that he would not ride with him and it was suggested that the keys to the decedent's car be taken by one of the group present. Suffice it to say that this did not happen and the decedent drove his car, with one of the group as a passenger, onto the eastbound lane of the Merritt Parkway in the State of Connecticut and proceeded westerly in the direction of oncoming traffic. Witnesses, who were properly driving on the eastbound lane, testified to seeing this automobile approaching directly at them, that the driver of one of the automobiles had time to pull to the right and avoid a collision, but the following car and the decedent's automobile crashed head on, killing the decedent, his passenger, and causing other injuries. While the record is not complete, it is a matter of common knowledge that the Merritt Parkway and the approaches thereto are constructed as a modern divided highway in the State of Connecticut.

A fair summation of the facts in this case establishes: That this was a witnessed accident; that there was undisputed evidence of intoxication of the decedent by a blood count (0.29%) and of his unfitness to drive an automobile; that he managed, contrary to any normal procedure, to drive his automobile into the wrong lane of a divided highway; that he drove on the wrong lane for a considerable distance with automobiles approaching from the opposite direction and his automobile crashed head on, without making " an effort to get out of the way ", into one of these automobiles lawfully proceeding in its own proper lane; that he lived in the State of Connecticut, not too far from the scene of the accident, and in close proximity to the Merritt Parkway, and of necessity must have been familiar with the approaches thereto.

From these facts there is no substantial evidence to permit an inference that this accident was not due solely to intoxication. It could not be the intendment of the Legislature to have the word " solely " become a barrier to the practicalities of life. There has been no case before this court which so vividly, perhaps unfortunately, portrays an automobile accident caused solely by intoxication. Pertinent to the facts is the wording in *Matter of Shannon* v. *American Can Co.* (278 App. Div. 546, 550) : " There may, of course, be cases of motor vehicle control where intoxication would appear to the reasonable mind the only cause and the presumption would be deemed met as a matter of law.''

The finding by the board that the accident was due to factors such as darkness and the short distance travelled on the Merritt Parkway by the decedent before the collision is based on conjecture and surmise, not substantial evidence. The board's original memorandum (May 10, 1962), afterward amended to delete portions thereof (July 9, 1962), is replete with statements and conclusions not part of the evidence but based upon speculation by counsel and others.

I would further observe that there was substantial evidence to establish that whatever business there might have been during the afternoon had terminated and the plans for dinner were strictly social.

For these reasons, I would vote to reverse and dismiss the claim.

BERGAN, P. J., and TAYLOR, J., concur with REYNOLDS, J.; HERLIHY, J., dissents in an opinion and votes to dismiss the claim.

Decision and award affirmed, with costs to the Workmen's Compensation Board.